**Fill in this information to identify the case:**

Debtor 1: Gamaliel Perez

Debtor 2: (Spouse, if filing)

United States Bankruptcy Court for the: Northern District of Illinois (State)

Case number 19-11775

Official Form 427

# Cover Sheet for Reaffirmation Agreement

12/15

**Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.**

## Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

**1 Who is the creditor?**

**State Farm Bank, FSB**
Name of the creditor

**2 How much is the debt?**

On the date that the bankruptcy case is filed $ 28,983.87

To be paid under the reaffirmation agreement $ 28,983.87

$ 629.41 per month for 50 months (if fixed interest rate)

**3 What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**

Before the bankruptcy case was filed **5.04%**

Under the reaffirmation agreement **5.04%**

[X] Fixed rate
[ ] Adjustable rate

**4 Does collateral secure the debt?**

[ ] No
[X] Yes. Describe the collateral. **16 CHEVROLET CAMARO**

Current market value **$ 21,725.00**

**5 Does the creditor assert that the debt is nondischargeable?**

[✓] No
[ ] Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6 Using information from *Schedule I: Your Income* (Official Form 106I) and *Schedule J: Your Expenses* (Official Form 106J), fill in the amounts.**

| Income and expenses reported on Schedules I and J | | Income and expenses stated on the reaffirmation agreement | |
|---|---|---|---|
| 6a. Combined monthly income from line 12 of Schedule I | $ 2,150 | 6e. Monthly income from all sources after payroll deductions | $ 2,150 |
| 6b. Monthly expenses from line 22c of Schedule J | − $ 4,027 | 6f. Monthly expenses | − $ 4,027 |
| 6c. Monthly payments on all reaffirmed debts not listed on Schedule J | − $ 0 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses | − $ 0 |
| **6d. Scheduled net monthly income** Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets. | $ [1,877] | **6h. Present net monthly income** Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets. | $ [1,877] |

Debtor Gamaliel Perez
First Name Middle Name Last Name

Case number (if known) 19-11775

| | |
|---|---|
| **7 Are the income amounts on lines 6a and 6e different?** | ☒ No<br>☐ Yes. Explain why they are different and complete line 10. |
| **8 Are the expense amounts on lines 6b and 6f different?** | ☒ No<br>☐ Yes. Explain why they are different and complete line 10. |
| **9 Is the net monthly income in line 6h less than 0?** | ☐ No<br>☒ Yes. A presumption of hardship arises (unless the creditor is a credit union)<br>Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10.<br>MY SON MAKES THESE CAR PAYMENTS. HE HAS ALWAYS MADE THE PAYMENTS AND WILL CONTINUE TO MAKE THEM. |
| **10 Debtor's certification about lines 7-9**<br><br>If any answer on lines 7-9 is *Yes*, the debtor must sign here.<br><br>If all the answers on lines 7-9 are No, go to line 11. | I certify that each explanation on lines 7-9 is true and correct.<br><br>✗ [signature] Signature of Debtor 1<br>✗ Signature of Debtor 2 (Spouse Only in a Joint Case) |
| **11 Did an attorney represent the debtor in negotiating the reaffirmation agreement?** | ☐ No<br>☒ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>☐ No<br>☒ Yes |

## Part 2: Sign Here

**Whoever fills out this form must sign here.**

**I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement.***

Signature [signature] Date 6/4/19
MM / DD/YYYY

Printed Name John Ellmann
A.R.D.C. # 6257894

Check one:

☒ Debtor or Debtor's Attorney
☐ Creditor or Creditor's Attorney

B2400A/B ALT (Form 240A/B ALT) (12/15)

- [x] **Presumption of Undue Hardship**
- [ ] **No Presumption of Undue Hardship**

(Check box as directed in Part D: Debtor's Statement in Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT
Northern District of Illinois

In re: Gamaliel Perez, Debtor

Case No. 19-11775
Chapter 7

## REAFFIRMATION AGREEMENT

*[Indicate all documents included in this filing by checking each applicable box.]*

- [ ] Part A: Disclosures, Instructions, and Notice to Debtor (pages 1 - 5)
- [ ] Part B: Reaffirmation Agreement
- [ ] Part C: Certification by Debtor's Attorney
- [ ] Part D: Debtor's Statement in Support of Reaffirmation Agreement
- [ ] Part E: Motion for Court Approval

*[**Note** : Complete Part E only if debtor was not represented by an attorney during the course of negotiating this agreement. **Note also** : If you complete Part E, you must prepare and file Form 240C ALT - Order on Reaffirmation Agreement.]*

**Name of Creditor:** State Farm Bank, FSB

- [ ] *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1. DISCLOSURE STATEMENT

**Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:**

**SUMMARY OF REAFFIRMATION AGREEMENT**

This Summary is made pursuant to the requirements of the Bankruptcy Code.

**AMOUNT REAFFIRMED**

The amount of debt you have agreed to reaffirm: $ 28,983.87

***The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.***

**ANNUAL PERCENTAGE RATE**

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: ___________%.

*— And/Or —*

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: ___________%. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$ ___________ @ ___________%;
$ ___________ @ ___________%;
$ ___________ @ ___________%.

b. If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: 5.04% .

*— And/Or —*

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: ___________%. If different simple interest rates apply to different balances included in the amount reaffirmed,

the amount of each balance and the rate applicable to it are:

$ ________ @ ________ %;
$ ________ @ ________ %;
$ ________ @ ________ %.

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| 16 CHEVROLET CAMARO | $3,896,375.00 |

*Optional--- At the election of the creditor, a repayment schedule using one Or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of ________ is due on ________, but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

*— Or —*

Your payment schedule will be 50 (number) payments in the amount of $ 629.41 each, payable (monthly, annually, weekly, etc.) on the 30 (day) of each month ( week, month, etc.), unless altered later by mutual agreement in writing.

*— Or —*

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A ''lien'' is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

**NOTE:** When this disclosure refers to what a creditor ''may'' do, it does not use the word "may'' to give the creditor specific permission. The word ''may'' is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

**PART B: REAFFIRMATION AGREEMENT.**

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:

Promissory Note and Security Agreement
Note date: 6/16/2017
Original amount: $3,896,375.00
Collateral: 16 CHEVROLET CAMARO

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

SIGNATURE(S):

Borrower:

Gamaliel Perez
(Print Name)

[signature]
(Signature)

Date: 6-4-19

Co-borrower, if also reaffirming these debts:

(Print Name)

(Signature)

Date:

Accepted by creditor:

State Farm Bank, FSB
(Printed Name of Creditor)

P.O. Box 2328 Bloomington, IL 61702
(Address of Creditor)

[signature]
(Signature)

Kasara Ward - Bankruptcy Specialist
(Printed Name and Title of Individual Signing for Creditor)

Date of creditor acceptance:

5/1/2019

**PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).**

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

[X] *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: John Ellmann A.R.D.C. # 6257894

Signature of Debtor's Attorney: [signature]

Date: 6/4/19

**PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT**

*[Read and complete sections 1 and 2, **OR**, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2* ***and*** your income less monthly expenses does not leave enough to make the *payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $2,150, and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $4,027, leaving $-1,877 to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: MY SON MAKES THESE CAR PAYMENTS. HE HAS ALWAYS MADE THE PAYMENTS AND WILL CONTINUE TO MAKE THEM.

**(Use an additional page if needed for a full explanation.)**

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: [signature]
(Debtor)

____________________
(Joint Debtor, if any)

Date: 6-4-19

— Or —

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: ____________________
(Debtor)

____________________
(Joint Debtor, if any)

Date: __________



REFERENCE #: 769972766792100

# PROMISSORY NOTE AND SECURITY AGREEMENT

State Farm Bank, F.S.B.
Bloomington, IL
877-734-2265

Date: 06/16/2017

| | |
|---|---|
| **Borrower:** | Gamaliel Perez |
| **Address:** | 414 S 3rd St<br>West Dundee IL 60118-2808 |
| **Co-Borrower:** | |
| **Co-Borrower:** | |
| **Co-Borrower:** | |
| **Co-Borrower:** | |
| **Co-Borrower:** | |

**Promise to Pay:** The undersigned ("Borrower", "you" or "your"), jointly and severally, promise(s) to pay to the order of State Farm Bank, F.S.B. ("Lender") at P.O. Box 5961, Madison, Wisconsin 53705-0961, the Amount Financed shown below with interest (Finance Charge) on the unpaid balance of the Amount Financed at the Annual Percentage Rate ("APR") shown below and accruing daily until the Amount Financed is paid in full. Interest shall be computed on the basis of a year consisting of 365/366 days and charged for the actual number of days elapsed. Borrower shall make payments according to the payment schedule shown below. The due date of the final payment is the final maturity of this Promissory Note and Security Agreement ("Note"), and any remaining unpaid amounts shall be due and owing on that date. The Total of Payments and Finance Charge shown below are estimates based on Borrower making the proper payment on each scheduled due date. Payments made after any due date will increase the total amount of Finance Charge and Total of Payments.

**TRUTH IN LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 5.090 % | $ 6,419.29 | $ 38,963.75 | $ 45,383.04 |

Your payment schedule will be:

| Number of Payments: | Amount of Payments: | When Payments are due: |
|---|---|---|
| 72 | $ 630.32 | Monthly Beginning 07/30/2017 |

☐ [Automatic Payment Annual Percentage Rate Reduction] (check if applicable)

When this box is checked, an APR reduction program is in place and you have qualified for an APR reduction of 0.15% by selecting recurring monthly electronic payments for this loan from an account with State Farm Bank®. The APR listed above includes this APR reduction when this box is checked.

**Property insurance is required. You may obtain property insurance from anyone acceptable to the Lender.**

**Credit Insurance:** Credit disability insurance is not required to obtain credit, and will not be provided unless you sign the Credit Insurance Disclosure Statement and agree to pay the additional cost for the term of this Note.

**Security:** You are giving a security interest in the motor vehicle, trailer, watercraft or off-road vehicle, and any proceeds thereof being purchased or refinanced with the loan proceeds, or used as collateral for this loan.

| Collateral/Vehicle | Year | Make | Model | Serial No. or VIN |
|---|---|---|---|---|
| Automobile | 2016 | CHEVROLET | Camaro | 1g1fh1r76g0137679 |
| | | | | |
| | | | | |

**Filing Fee:** You agree to pay any lien filing fees.

**Late Charge:** If any payment is late more than 10 days you will be charged 5% of the unpaid payment or $10.00, whichever is greater.

**Prepayment: If you pay this Note off in full within 12 months of the date of this Note, you will have to pay Lender a prepayment penalty of $100. If this Note includes a Military Lending Act Addendum, there will be no prepayment penalty.**

**Other Terms:** See your contract terms on all pages of this Note for any additional information about nonpayment, default, and required repayment in full before the scheduled date, prepayment refunds and penalties and further information about security interests.

REFERENCE #: 769972766792100

**IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THIS NOTE, YOU MAY LOSE THE VEHICLE YOU PURCHASED WITH THIS LOAN, OR WHICH SERVES AS COLLATERAL FOR THIS LOAN.**

USE OF AGENT: Your financing may be obtained through clerical assistance of a State Farm® insurance agent or staff member; if so (1) no compensation of any kind is to be paid between the seller of your vehicle and the State Farm agent or staff member; and (2) no referral relationship or arrangement is to exist between the State Farm agent or staff member and the seller of your vehicle relating to the purchase of your vehicle or your loan unless this transaction is a "Purchase Money Loan" under 16 C.F.R. Section 433.1(d) authorized by Lender. Unless otherwise authorized by Lender, you are to receive the credit application, this Note, and other documentation for this loan directly from Lender or a State Farm agent or staff member and not from the seller of the vehicle and those documents are to be completed and executed directly with Lender or in the presence of the State Farm agent or staff member. If your loan is being obtained through the assistance of a third party ("Agent"), you understand that the Agent is not an employee of Lender and the Agent is not authorized to make representations or bind Lender.

**IF THE FOREGOING DISCLOSURE IS NOT AN ACCURATE STATEMENT OF THE WAY YOUR LOAN TRANSACTION HAS BEEN HANDLED OR IF YOU DO NOT UNDERSTAND ANY OF THE DISCLOSURE INCLUDING WHAT CONSTITUTES A "PURCHASE MONEY LOAN," DO NOT EXECUTE ANY FURTHER DOCUMENTATION AND CONTACT STATE FARM BANK AT ONCE AT 877-734-2265. CALLERS WHO ARE HEARING OR SPEECH IMPAIRED SHOULD DIAL 711 OR USE A PREFERRED TELECOMMUNICATIONS RELAY SERVICE.**

**By executing this Note you acknowledge that you have received this disclosure, that you have read this disclosure, that you understand this disclosure, and that your loan transaction has been handled in accordance with the conditions stated above.**

**The following Notice applies only if the transaction is a "Purchase Money Loan" under 16 C.F.R. Section 433.1(d)**

**NOTICE**

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

## ADDITIONAL TERMS AND PROVISIONS

PAYMENTS: All payments must be made in United States currency via check, money order, or electronic payment. Borrower may make a prepayment of principal in full or in part at any time before maturity. If Borrower prepays this Note in full, then Borrower may be required to pay Lender a prepayment penalty as disclosed above in the Truth in Lending Disclosures. Prepayments of principal and overpayments will be applied first to any outstanding late fees, then to principal of the next payment installment and will reduce or satisfy the next payment due. If Borrower prefers prepayment of principal to be applied to the last installment(s) and not excuse or defer any scheduled payments until this Note is paid in full, payment must be mailed along with instruction, to the address provided under Promise to Pay on page 1 of this Note. Interest will accrue on the unpaid principal balance regardless of whether payments are applied to the next payment due or to the last installment(s).

SECURITY INTEREST: To secure payment of this Note and all renewals and extensions hereof, Borrower grants and pledges to Lender a security interest in the vehicle described above, and all attachments and all accessions thereto and all proceeds thereof ("Collateral").

PERFECTION OF SECURITY INTEREST: Borrower is responsible for obtaining clear title to the Collateral, including removing or paying off any lien(s) on the Collateral and allowing Lender to place a first lien on the Collateral. To the extent allowed by applicable law, Lender is hereby appointed as Borrower's attorney-in-fact to do at Lender's option and at Borrower's expense all things necessary or desirable to perfect, keep perfected and maintain Lender's security interest in the Collateral, to protect such Collateral and to execute any document or instrument to perfect, keep perfected and protect such security interest of the Lender in the Collateral. IN NO EVENT WILL LENDER BE LIABLE TO BORROWER FOR FAILURE TO OBTAIN CLEAR TITLE TO THE COLLATERAL, INCLUDING REMOVING OR PAYING OFF ANY LIEN(S) ON THE COLLATERAL.

COLLATERAL: Borrower covenants, represents and agrees with Lender as follows: (a) that Borrower is the owner of the Collateral free from any lien, security interest, encumbrances or claim and will defend the Collateral against the claims and demands of all persons; and (b) that Borrower will not sell, lease or encumber the Collateral or grant any subsequent security interest therein nor part with possession thereof; and (c) that if Collateral is in the possession of Borrower, that Borrower will not remove the Collateral from the United States without the prior written consent of Lender; and (d) that Borrower will not use or permit the Collateral to be used in violation of any law, ordinance or policy of insurance covering said Collateral; and (e) that Borrower will maintain the Collateral in good condition and repair and shall pay taxes and assessments levied on the Collateral; and (f) that the Collateral will not be used as a residence. Borrower will promptly advise Lender of any change of address or change in location of the Collateral.

**REFERENCE #:** 769972766792100

**USE OF PROCEEDS:** The proceeds of this Note will be used to acquire the Collateral or to refinance prior indebtedness used to acquire the Collateral and Lender may disburse such proceeds to the seller of the Collateral or to such other lender.

**PAYMENT OBLIGATIONS:** Loss, theft, damage to, destruction and seizure of the Collateral shall not relieve Borrower from the payment and performance of any obligation hereunder or the indebtedness secured hereby.

**INSURANCE:** Borrower shall procure and maintain insurance on the Collateral for the full term of this Note against the risks of fire, theft, collision and such other risks as Lender may require in such amounts and conditions and with such insurers as are satisfactory to Lender; and Borrower shall deliver to Lender within ten (10) days from the date of the Note, a fully paid policy or policies of insurance containing a Lender's Loss Payable Clause (stating that the proceeds are payable to the Lender) in favor of Lender providing for ten (10) days prior written notice of cancellation. If Borrower shall fail, for any reason, to insure the Collateral as required by this Note, or if Borrower's insurance shall be canceled, Lender at its option, may procure such insurance as shall be deemed necessary by Lender and advance the premium therefore on behalf of Borrower. Borrower promises to pay such premiums to Lender, with interest thereon at the Annual Percentage Rate shown above, as additional indebtedness due hereunder and secured hereby, or Lender may, at its option, declare all obligations secured hereby to be immediately due and payable. Borrower assigns to Lender any unearned or returned premiums. To the extent allowed by applicable law, Lender is appointed Borrower's attorney-in-fact to endorse any check or draft payable to Borrower in order to collect such unearned premiums or any benefits of such insurance. All sums received by Lender as payment of insurance losses or for return of premiums under said policies of insurance shall, at the option of Lender, be applied to the unpaid principal balance or to currently maturing installments on this loan.

**PAYOFF PROTECTOR®:** AMOUNT WE WILL WAIVE: If the conditions of this provision are satisfied, we will waive the difference between your unpaid principal balance under this Note as of the date of the total loss ("Total Loss") and the entire insurance settlement less: (1) any past due or extended payment amounts (unless expressly agreed to in writing by the Lender), as of the date of the Total Loss; (2) any interest, fees, or charges incurred or assessed prior to or after the date of the Total Loss through the date of settlement; (3) any refundable portion of any credit insurance premium; and (4) any amount Borrower could otherwise have collected from any insurer through reasonable diligence. CONDITIONS: We will waive the amount set forth above, provided the following stipulations are met: (1) this provision and this Note are in effect; (2) the Collateral is determined to be a Total Loss by the primarily responsible insurer, (3) the insurance coverage on the Collateral required under this Note has been maintained, is currently in force, and the full amount of any insurance proceeds is paid to us; (4) Borrower has complied with all other terms and conditions of the Note (including making required payments as they become due while awaiting a settlement from the insurance company); (5) Borrower has paid us any deductions the insurance company may make when it honors the Borrower's claim (excluding the deductible amount); (6) no other coverage is available under any guaranteed asset protection coverage or credit insurance provided to Borrower under any insurance policy; (7) Borrower notifies us within sixty (60) days of the date following the Total Loss and provides us with a copy of the settlement, declarations page of the policy, any accident or police report and any other documentation we request; and (8) Borrower takes necessary steps to recover the Collateral and prevent or reduce any further loss to the Collateral; Borrower agrees to file a claim under any policy which may provide coverage upon our request. EXCLUSIONS: This provision will not apply if Borrower is 30 days or more past due as of the date of the Total Loss (notwithstanding anything to the contrary contained in this provision) or the Total Loss is (1) due to Borrower's surrender; or (2) due to acts of terrorism; or (3) excluded from coverage by the insurance coverage on the Collateral; or (4) in the event multiple pieces of Collateral appear on the Note, the amount waived for any one piece of Collateral shall be an amount of the outstanding principal balance equal to the proportionate value of the Collateral, determined by the Lender, as of the Note date and the original principal balance of the loan. TERM: This provision commences on the date this Note becomes effective and terminates on the date this Note is terminated. In no event will the amount waived or benefit to the Borrower exceed the outstanding loan balance. This is NOT an insurance policy.

**RETURNED INSTRUMENT CHARGE:** Borrower agrees to pay a charge of $25 for each check or instrument submitted as payment on this loan which is later returned unpaid.

**EVENTS OF DEFAULT AND ACCELERATION:** If Borrower shall default in the payment, when due, of any installment of this Note or in the payments or performance of any other obligation hereunder or indebtedness due to Lender, or in case of loss, substantial damage to, destruction, sale, encumbrance, concealment, removal, attachment or levy upon the Collateral; or if any proceeding shall be instituted by or against Borrower (or Borrower's business) under any bankruptcy, insolvency or similar statute; or Borrower shall make an assignment for the benefit of creditors, or Lender shall deem itself insecure; or upon the death or incompetency of any Borrower, endorser or co-signer; or if Borrower makes any representation, warranty, statement or signature to Lender that is false or misleading; then upon the happening of any of the foregoing events of default, Lender at its option may declare the unpaid balance of this Note including accrued interest and all other indebtedness and obligations of Borrower to Lender immediately due and payable, without notice or demand. Borrower agrees to pay all of Lender's reasonable costs and expenses in enforcing this Note or in realizing upon the Collateral, including court costs and reasonable attorneys' fees, to the extent permitted by applicable law (including bankruptcy or insolvency proceedings) in addition to an administrative fee of $150.00 assessed by Lender.

**REFERENCE #:** 769972766792100

**REMEDIES OF LENDER:** Upon the occurrence of any event of default, the Lender shall have all of the rights and remedies of a secured party as provided by Article 9 of the Uniform Commercial Code, including, but not limited to, the right of Lender to take immediate possession of the Collateral and anything located therein, with or without judicial process, and for such purpose, to enter on the premises where such Collateral may be located. In the event of default, Borrower agrees to make the Collateral available to Lender at a place acceptable to Lender which is convenient to Borrower. In the event the Collateral is repossessed, Borrower will be assessed an administrative fee of $150.00 in addition to any repossession and storage charges. In the event of resale of the Collateral after repossession, Borrower expressly agrees that the requirements of reasonable notice shall be met if notice is delivered or mailed to Borrower at the address of Borrower shown herein prior to the sale or other disposition of the Collateral as provided by applicable law. Disposition of the Collateral may be made in any commercially reasonable manner. The net proceeds realized upon any sale or other disposition of the Collateral, after deducting expenses of the sale or other disposition, repossession or storage incurred by Lender, shall be applied to the payment of this Note and all other indebtedness or obligations of Borrower to Lender, in such manner as Lender shall elect. Lender shall account to Borrower for any surplus thereafter realized on such disposition, Borrower shall remain liable for any and all unpaid amounts remaining or any other deficiency, which Borrower agrees to pay immediately. All rights and remedies of Lender, whether provided for herein or conferred by law, are cumulative.

**ADDITIONAL REMEDIES:** Demand, presentment for payment, notice of dishonor, and notice of intent to accelerate are hereby waived by Borrower and all cosigners and endorsers hereon. Lender is authorized to appropriate and apply toward payment of this Note any other property belonging to Borrower in the possession of Lender, as well as any indebtedness of Lender to Borrower, and Lender is hereby given a first and prior lien upon such other property. All cosigners and endorsers consent that the time of payment may be extended or renewal notes taken by the holder hereof without notice and that such extension or renewal shall not discharge their liability hereon.

**PROCESSING OF PAYMENTS:** Lender's business days for processing payments are Monday through Friday, excluding Lender's holidays. Payments received on a non-business day will be processed on the next business day, and Finance Charges (interest) continue to accrue on the unpaid balance of the Note. The payment due date will not be extended if it falls on a non-business day, and in such event Borrower should make the payment to Lender in advance of the due date.

**PHONE NOTIFICATION:** Borrowers agree that State Farm Bank may contact Borrowers at the land line/cell phone numbers that have been provided on the application, or any phone numbers that Borrowers may provide in the future, either directly or through the use of an automated dialer.

**WAIVER AND SEVERABILITY:** No delay or omission by Lender in exercising any right or remedy shall operate as a waiver of such right or remedy or any other right or remedy. A waiver on any one occasion shall not act as a waiver for any other occasion. Lender may accept late or partial payments or payments marked "in full" or with similar language, without waiving any rights or remedies. If any provision of this Note is held invalid, such invalidity shall not affect the validity and enforceability of the remaining provisions of this Note.

**SUCCESSORS AND ASSIGNS:** All rights of Lender shall also benefit the successors and assigns of Lender, and all obligations of Borrower shall be binding upon Borrower's heirs, beneficiaries, personal representatives, successors and assigns. Borrower may not assign its rights and obligations under this Note, unless the Lender agrees in writing to such assignment. If there is more than one Borrower, their obligations hereunder shall be joint and several. Any changes to this Note must be in writing and signed by Lender.

**PRIVACY:** Lender does not share non-public personal information about you except as stated in the State Farm Privacy Policy which has been provided to you. We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**GOVERNING LAW:** This Note is governed by federal law and, to the extent not preempted thereby, by the law of the State of Illinois. The acceptance of the Note is expressly conditioned upon Lender's approval and all proceeds will be disbursed by Lender at its principal office in Illinois. Regardless of where you live, your credit application will be forwarded to Lender in Illinois and Lender will process your application and make all lending decisions at its offices in Illinois. This Note is entered into in Illinois upon Lender's acceptance. All terms and conditions in this Note (including applicable fees) are material to the determination of the interest rate.

REFERENCE #: 769972766792100

Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditors) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NOTICE TO BORROWER: (A) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON EACH PAGE, EVEN IF OTHERWISE ADVISED. (B) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. (C) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (D) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS NOTE.

ACKNOWLEDGMENT: Borrower agrees to the terms of this Promissory Note and Security Agreement including the additional terms set forth on the preceding pages. Borrower acknowledges receipt of a completed copy of this Note and the credit insurance disclosure statement (if applicable) prior to consummation of the loan.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

BORROWER(S) SIGNATURES

X ______________________ X ______________________
Gamaliel Perez

X ______________________ X ______________________

X ______________________ X ______________________

1000060

2011 125515 210 01-18-2017

STATE OF ILLINOIS

CERTIFICATE OF TITLE OF A VEHICLE

VEHICLE IDENTIFICATION NO. 1G1FH1R76G0137679 | YEAR 2016 | MAKE CHEVROLET | MODEL CAMARO | BODY STYLE COUPE | TITLE NO. 17199692686

DATE ISSUED 07/18/17 | ODOMETER 2817 | MOBILE HOME SQ FT | PURCHASED 06/21/17 USED | TYPE TITLE ORIGINAL

MAILING ADDRESS

STATE FARM BANK
PO BOX 5961
MADISON WI 53705-0961

LEGEND(S)

ACTUAL MILEAGE

OWNER(S) NAME AND ADDRESS
GAMALIEL PEREZ
414 S 3RD ST
WEST DUNDEE IL 60118-2806

FIRST LIENHOLDER NAME AND ADDRESS
STATE FARM BANK
PO BOX 5961
MADISON WI 53705-0961

SECOND LIENHOLDER NAME AND ADDRESS

ASSIGNMENT OF TITLE

WARNING ODOMETER DISCREPANCY

Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD.

M9163467

JESSE WHITE, Secretary of State

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

FIRST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING | NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale | Dealer's Name | Dealer No.

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

SECOND REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING | NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale | Dealer's Name | Dealer No.

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

THIRD REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING | NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale | Dealer's Name | Dealer No.

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

FOURTH REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING | NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale | Dealer's Name | Dealer No.

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

LAST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | State

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING | NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale | Dealer's Name | Dealer No.

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

VSD 40.24

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.